1

2

3

4

5

6 # UNITED STATES DISTRICT COURT

7 ## DISTRICT OF NEVADA

8

9 ARIEL MARISCAL, a minor,                    )        3:08-CV-00162-RCJ-(RAM)
  by and through his mother                  )
10 and guardian, IRMA MARISCAL,               )
                                             )        **ORDER**
11                        Plaintiff,          )
                                             )
12 v.                                         )
                                             )
13 RYAN SIMPSON,                              )
                                             )
14                        Defendant.          )
   _____  )

15

16      Plaintiff Ariel Mariscal filed the present lawsuit against Defendant Ryan Simpson

17 alleging false imprisonment, assault, and battery.  Presently before the Court are Plaintiff's

18 Motion for Summary Judgment (#35) and Defendant's Motion for Summary Judgment (#36).

19 Both motions have been fully briefed.  The Court held a motion hearing on March 12, 2010.

20 The Court now issues the following order.  IT IS HEREBY ORDERED that Plaintiff's Motion

21 for Summary Judgment (#35) is DENIED and Defendants' Motion for Summary Judgment

22 (#36) is GRANTED.

## I. BACKGROUND

23      Defendant Ryan Simpson, ("Defendant"), was a police officer for the City of Sparks.

24 (Def.'s Mot. for Summ. J. (#36) Ex. 3 at 6:4–10).  Defendant lived next door to Eric Ballin.

25 Defendant spoke to Eric's mother about Eric and his friends playing loud music and disturbing

26 the peace.  (*See id.* at 35:24–36:9).  Defendant then went on vacation.  When Defendant

27 ///

28

1

1   returned, he noticed that two of his garage windows were shot out and there was damage to

2   the wood frames around the windows. (*Id.* at Ex. 9 at 91:6–15).

3       Defendant felt threatened by the juveniles that would hang out at Eric's house because

4   they would stare at him and his wife. (*Id.* at Ex. 9 at 93:10–18). Defendant even obtained an

5   extended protective order against one of the juveniles, Andrew Corella. (*Id.* at Ex. 11).

6       Plaintiff Ariel Mariscal, ("Plaintiff"), was friends with Eric and Andrew and would often

7   hang out at Eric's house. (*Id.* at Ex. 2 at 62:7–65:13). Plaintiff was fifteen years old on

8   November 1, 2007. (*Id.* at Ex. 1).

9       On November 1, 2007, Plaintiff, Andrew, and Eric were walking home from a friend's

10  house at about 8:30 p.m. They began to throw Milk Duds at each other. (*Id.* at Ex. 4 at

11  56:22–58:9, 63:13–64:2). At around that same time, Defendant was in his garage. He heard

12  what he thought was the discharge of a gas fired or small caliber weapon. (Pl.'s Mot. for

13  Summ. J. (#35) Ex. 5 at 14:8–18). Then, he heard a pinging noise that sounded like metal

14  hitting metal. (*Id.*; Def.'s Mot. for Summ. J. (#36) Ex. 2 at 88:3, 100:7, 132:15–22). Defendant

15  ran into his house and out the front door. (*Id.* at Ex. 12 at 9:15–18). Defendant took his gun

16  from his waistband and held it in his hand as he ran outside. (*Id.* at Ex. 3 at 12–15).

17  Defendant saw Plaintiff and Andrew running down the street and thought they were involved

18  with the projectile hitting his garage door. (*Id.* at Ex. 3 at 40:2–5). Defendant did not

19  recognize Plaintiff and Andrew and did not see any weapons on them. (Pl.'s Mot. for Summ.

20  J. (#35) Ex. 5 at 18:2–25). Defendant chased after them and ordered them to stop and get

21  to the ground. (Def.'s Mot. for Summ. J. (#36) Ex. 3 at 19:21–20:25, Ex. 12 at 11:4–5,

22  13:18–21). Defendant thought that his house had been shot at and that Plaintiff or Andrew

23  had a gun. (*Id.* at Ex. 3 at 19:24–20:1).

24      Plaintiff and Andrew stopped and went to the ground. Defendant saw that there was

25  no gun in their hands and put his own weapon back in his waistband. (*Id.* at Ex 3 at 26:20–23,

26  27:16–28:4). Plaintiff did not go completely to the ground, but was in a push-up position. (*Id.*

27  at Ex. 2 at 147:6–148:15). Defendant saw that Plaintiff might try to escape. (*Id.* at Ex. 3 at

28  29:1–13). Defendant grabbed Plaintiff by the arm, dragged him to the ground, and slapped

1   him. (*Id.* at 29:14–19). Plaintiff did not see the blow coming toward him. (Pl.'s Mot. for

2   Summ. J. (#35) Ex. 3 at 122:20–23). According to Plaintiff, the force of the blow knocked him

3   unconscious. (*Id.* at 115:1–8). Defendant did not notice if Plaintiff was unconscious or not.

4   (Def.'s Mot. for Summ. J. (#36) 32:4–9). Plaintiff argues that a photograph of his injuries

5   suggest he was struck by a gun, but the attached exhibit is too difficult to make out to draw any

6   conclusions. (*See* Pl.'s Mot. for Summ. J. (#35) between Ex. 3 and Ex. 4; Pl.'s Reply (#47)

7   3:27–4:2).

8        Defendant than saw Andrew getting up, drew his gun and pointed it at Andrew, told

9   Andrew to lay on the ground, grabbed Andrew by the hair, and pushed Andrew back down.

10  (Def.'s Mot. for Summ. J. (#36) Ex. 3 at 32:11–33:5). According to Andrew, Defendant stuck

11  his gun in Andrew's face. (Pl.'s Mot. for Summ. J. (#35) Ex. 1 at 98:3–99:15, 143:24–144:6).

12  Meanwhile, Plaintiff, apparently after regaining consciousness, became vocally belligerent

13  towards Defendant. (Def.'s Mot. for Summ. J. (#36) Ex. 2 at 89:13–25, Ex. 12 at 16:6–13).

14       Defendant then told Plaintiff and Andrew that they were under arrest. (Def.'s Mot. for

15  Summ. J. (#36) Ex. 3 at 44:3–15, Ex. 9 at 115:24–116:21). Defendant's wife called 911. (*Id.*

16  at Ex. 12 at 17:12–15). Defendant saw Sheriff's deputies driving towards him, so he ordered

17  Plaintiff and Andrew to get up off of the street and to sit on the curb. They complied. (*Id.* at

18  Ex. 3 at 34:13–24). The deputies did not arrest Plaintiff or Andrew. (*Id.* at Ex. 2 at 22:4–23:9).

19  Plaintiff was taken to the hospital and x-rayed for possible concussions. (*Id.* at Ex. 4 at

20  59:21–25, 61:6–24).[1]

21                          **II. LEGAL STANDARD**

22       Summary judgment "should be rendered if the pleadings, the discovery and disclosure

23  materials on file, and any affidavits show that there is no genuine issue as to any material fact

24  and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The

25  moving party bears the burden of demonstrating the absence of a genuine issue of material

26

27       [1] Both Plaintiff and Defendant provide details on what occurred after Defendant arrested
    Plaintiff and what the Sheriff's investigation discovered. This is not relevant to the present
28  legal issues. Defendant's privilege to arrest and use force are not dependant on information
    not available to him at the time.

fact and the material lodged by the moving party must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). "'[A] material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the differing versions of the truth.'" *Lynn v. Sheet Metal Workers' Int'l Ass'n*, 804 F.2d 1472, 1483 (9th Cir. 1986) (quoting *Admiralty Fund v. Hugh Johnson & Co.*, 677 F.2d 1301, 1306 (9th Cir. 1982)). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986) (citations omitted). "A mere scintilla of evidence will not do, for a jury is permitted to draw only those inferences of which the evidence is reasonably susceptible; it may not resort to speculation." *British Airways Board v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir. 1978); *see also Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 596 (1993) ("[I]n the event the trial court concludes that the scintilla of evidence presented supporting a position is insufficient to allow a reasonable juror to conclude that the position more likely than not is true, the court remains free . . . to grant summary judgment."). Moreover, "[i]f the factual context makes the non-moving party's claim of a disputed fact implausible, then that party must come forward with more persuasive evidence than otherwise would be necessary to show there is a genuine issue for trial." *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1149 (9th Cir. 1998) (citing *Cal. Architectural Bldg. Products, Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987)). Conclusory allegations that are unsupported by factual data cannot defeat a motion for summary judgment. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

### III. ANALYSIS

The motions rest on two issues: (1) whether Defendant was legally authorized to arrest Plaintiff, and (2) whether Defendant used excessive force to effect an arrest of Plaintiff. Defendant was legally authorized to arrest Plaintiff because he reasonably believed that a firearm was discharged at his house and that Plaintiff was responsible. Plaintiff has failed to come forth with more than a scintilla of evidence to suggest that Defendant used excessive

force to effect the lawful arrest.  Therefore, Defendant is entitled to judgment as a matter of law based on the undisputed material facts.

**A.    The privilege of using force to make a lawful arrest excuses Defendant from liability for false imprisonment and the use of reasonable force.**

To establish a prima facie case of false imprisonment, Plaintiff must prove that Defendant restrained his liberty "'under the probable imminence of force *without any legal cause or justification*.'"  *Garton v. City of Reno*, 720 P.2d 1227, 1228 (Nev. 1986) (quoting *Hernandez v. City of Reno*, 634 P.2d 668 (Nev. 1981)) (emphasis in original).  "An integral part of the proof of this tort is the commission or instigation of a false arrest (i.e., an unlawful arrest or restraint of personal liberty)."  *Fleeger v. Bell*, 95 F. Supp. 2d 1126, 1131 (D. Nev. 2000).  An arrest made pursuant to a Nevada statute cannot be the basis for the tort of false imprisonment.  *See id.*

"To establish an assault claim, a plaintiff must show that the actor (1) intended to cause harmful or offensive physical contact, and (2) the victim was put in apprehension of such contact."  *Burns v. Mayer*, 175 F. Supp. 2d 1259, 1269 (D. Nev. 2001) (citing Restatement (Second) of Torts § 21 (1965)).  "To establish a battery claim, a plaintiff must show that the actor (1) intended to cause harmful or offensive contact, and (2) such contact did occur."  *Burns,* 175 F. Supp. 2d at 1269 (citing Restatement (Second) of Torts §§ 13, 18 (1965)).  But, an officer's use of force that he reasonably believes is necessary to effect a lawful arrest is privileged.  Restatement (Second) of Torts §§ 118, 121, 132 (1965).

**B.    The standards for peace officers making arrests apply to Defendant even though he was off duty when he arrested Plaintiff.**

By statute, Nevada authorizes arrests by peace officers and private persons. Nev. Rev. Stat. § 171.104.  There are different standards for arrests by peace officers and private citizens.

In general,

a peace officer . . . may, without a warrant, arrest a person:
(a) For a public offense committed or attempted in his presence.
(b) When a person arrested has committed a felony or gross misdemeanor,

5

1    although not in his presence.
     (c) When a felony or gross misdemeanor has in fact been committed, and he
2    has reasonable cause for believing the person arrested to have committed
     it.
3    . . . .

4    Nev. Rev. Stat. § 171.124(1).[2]  A peace officer "may also, at night, without a warrant, arrest

5    any person whom he has reasonable cause for believing to have committed a felony or gross

6    misdemeanor, and is justified in making the arrest, though it afterward appears that a felony

7    or gross misdemeanor has not been committed."  Nev. Rev. Stat. § 171.124(2).

8        A private person may arrest another:
         1. For a public offense committed or attempted in his presence.
9        2. When the person arrested has committed a felony, although not in his
         presence.
10       3. When a felony has been in fact committed, and he has reasonable cause
         for believing the person arrested to have committed it.
11
     Nev. Rev. Stat. § 171.126.
12
         Plaintiff contends that the standard for private-citizen arrests apply to Defendant's
13
     actions. (See Pl.'s Mot. for Summ. J. (#35) 6:18–8:10).  But, it is undisputed that Defendant
14
     was a peace officer at the time of the incident.  The plain language of the statutes do not
15
     delineate between on-duty and off-duty police officers.  Plaintiff has cited no authority holding
16
     that a off-duty police officer has no more power to arrest than a private citizen.
17
         "At all times and all places, a police officer has the duty to maintain order and to
18
     effectuate arrests, which is not affected by whether the officer is in or out of uniform." Packard
19
     v. Rockford Professional Baseball Club, 613 N.E.2d 321, 328 (Ill. Ct. App. 1993).  "[S]ince an
20
     officer is 'always obligated to prevent the commission of crime in his presence, any action
21

22       [2] The statute also grants peace officers authority to make warrantless arrests "[o]n a
     charge made, upon a reasonable cause, of the commission of a felony or gross misdemeanor
23   by the person arrested." Nev. Rev. Stat. § 171.124(1)(d). Defendant argues that this provision
     gave him authority to arrest Plaintiff. (Def.'s Mot. for Summ. J. (#36) 15:5–7). Defendant
24   seems to interpret this provision to mean that a peace officer may arrest on probable cause
     alone. But this interpretation ignores the "charge" language and would make superfluous the
25   provision authorizing arrest when a felony was in fact committed and the officer has
     reasonable cause to believe the arrestee committed it.  The better interpretation is that
26   § 171.124(1)(d) authorizes peace officers to arrest if they have reasonable cause to believe
     that the arrestee committed a felony or gross misdemeanor based on information from a third-
27   party. See Am. Jur. 2d Arrest §§ 36–38 (2009). Section 171.124(1)(d) does not apply to the
     circumstances of this case as Defendant was not acting based on any charge made by a third-
28   party.

                                             6

1   taken by him toward that end, even in his official off-duty hours, falls within the performance
2   of his duties as a police officer.'" *Id.* (quoting *Banks v. City of Chicago*, 297 N.E.2d 343 (Ill. Ct.
3   App. 1973).

4        Plaintiff contends that Defendant cannot be judged under the standard for peace
5   officers making arrests because this Court previously held that he was not acting under color
6   of law when he made the arrest. (Pl.'s Opp'n (#46) 6:23–26). The arrest statute only requires
7   that Defendant be a peace officer, not that he make the arrest under color of law. Though
8   Defendant did not act under color of law, he was still a peace officer. Therefore, Defendant's
9   arrest of Plaintiff must be judged under the standard for peace officers.

10       **C.    Defendant was authorized to arrest Plaintiff because he had reasonable**
11            **cause to believe Plaintiff had committed a felony and the arrest occurred**
12            **at night.**

13       Defendant made a lawful arrest of Plaintiff if he made the arrest at night and had
14   reasonable cause to believe that Plaintiff had committed a felony or gross misdemeanor, even
15   though he did not have a warrant and even if no felony or gross misdemeanor in fact had been
16   committed. Nev. Rev. Stat. § 171.124(2). Reasonable cause for arrest is defined "as being
17   'such a state of facts as would lead a man of ordinary care and prudence to believe or
18   entertain an honest and strong suspicion that the person is guilty.' The presence or absence
19   of probable cause to arrest must be determined in the light of all the circumstances, and it is
20   immaterial that each circumstance, taken by itself, may be consistent with innocence." *Minor*
21   *Boy v. State*, 537 P.2d 477, 480 (Nev. 1975) (quoting *Schnepp v. State*, 260, 415 P.2d 619,
22   621 (Nev. 1966)). To determine if reasonable cause exists, "it is appropriate to consider the
23   expertise of police officers." *Lyons v. State*, 796 P.2d 210, 216 (Nev. 1990), *abrogated on*
24   *other grounds*, *Vanisi v. State*, 22 P.3d 1164 (Nev. 2001). "When the facts relating to the
25   existence of probable cause are not in dispute, it becomes a question of law whether such
26   facts constitute probable cause." *Marschall v. City of Carson*, 464 P.2d 494, 498 (Nev. 1970).

27       Defendant contends that he believed that the crime of discharging a firearm at his home
28   had been committed. (Def.'s Mot. for Summ. J. (#36) 15:15–16). In Nevada, willfully and

7

maliciously discharging a firearm into an occupied building is a felony.  Nev. Rev. Stat. § 202.285(1).  "'Firearm' means any device designed to be used as a weapon from which a projectile may be expelled through the barrel by the force of any explosion or other form of combustion."  Nev. Rev. Stat. § 202.253(2).  A BB gun is a firearm.  *See Manning v. State*, 810 P.2d 1216, 1216 (Nev. 1991) (holding BB gun is a firearm under old definition defining firearm as "any weapon with a caliber of .177 inches or greater from which a projectile may be propelled by means of explosive, spring, gas, air or other force").[3]  It is undisputed that Defendant arrested Plaintiff at night.

Defendant heard something hit his garage and thought it was a firearm discharge.  His house had been shot at before.  He went outside and saw two boys running away in the street and concluded they had shot at his garage.  Even if Plaintiff was in fact innocent and even if no felony actually occurred,[4] Defendant had reasonable cause at the time to believe Plaintiff and Andrew had discharged a firearm at his garage.  Therefore, Defendant was authorized by law to arrest Plaintiff.

**D.     Plaintiff has failed to produce more than a mere scintilla of evidence suggesting that Defendant employed excessive force.**

An officer may use force that he reasonably believes is necessary when making an arrest.  Restatement (Second) of Torts § 132. Amount Of Force (1965).  An officer may use deadly force to arrest a person only if he has probable cause to believe that the person committed a felony involving the infliction or threat of serious bodily harm or the use of deadly force or that the person poses a threat of serious bodily harm to others.  Nev. Rev. Stat. § 171.1455.  "Deadly force is defined as 'force likely or intended to cause death or great bodily harm.'"  *Earl v. State*, 904 P.2d 1029, 1031 n.2 (Nev. 1995) (quoting Black's Law Dictionary 398 (6th ed. 1990)).

---

[3] The Assembly Committee on Judiciary represented that the amended firearm definition includes BB guns.  Assembly Bill 393 Minutes of the Assembly Committee on Judiciary 68th Sess. at 1530 (April 11, 1995).

[4] A felony may have occurred.  BB and air-soft pellets were found in front of Defendant's home.  (Def.'s Mot. for Summ. J. (#36) Ex. 20 at 13:2–3).

8

Plaintiff contends that Defendant unreasonably used deadly force against him to effect his arrest by pointing a loaded gun at Plaintiff. (Pl.'s Mot. for Summ. J. (#35) 8:13–10:23). Defendant points out that Plaintiff cites no Nevada case that holds merely brandishing or pointing a gun at someone constitutes deadly force.   (Def.'s Opp'n (#41) 24:1–2). Furthermore, Plaintiff has produced no evidence that Defendant pointed his gun at Plaintiff, though there is evidence that suggests Defendant pointed his gun at Andrew.  Therefore, Plaintiff has failed to produce any evidence that Defendant used deadly force against Plaintiff.

It is undisputed that Defendant struck Plaintiff.  Defendant testified that he merely slapped Plaintiff with an open hand while he drug him to the ground.  Defendant did this in order to prevent escape and to retain control of the situation as he made the arrest. The Court holds that Defendant acted with reasonable force when he slapped Plaintiff's face and pulled him to the ground as a matter of law.

According to Plaintiff, Defendant struck him so hard that he was knocked unconscious as he was laying on the ground.  However, Plaintiff admits he does not know if Defendant struck him with a gun.  Furthermore, though Plaintiff testified he was rendered unconscious, there is evidence that Plaintiff was conscious enough to yell at Defendant and to move to the curb soon after he was struck.  Plaintiff also suggests that Defendant struck him with his gun based on the impact of the blow and the pattern of the wounds.  Plaintiff has failed to provide evidence of this.  The photograph he has attached to his motion papers is indiscernible.  He has provided no expert medical testimony that suggests the wounds Plaintiff suffered were caused by a blow with a gun rather than by a slap and by hitting his head on the ground. Though Plaintiff has pointed to some indirect evidence that Defendant might have used excessive force to arrest him, this evidence is simply so weak that it cannot survive summary

9

1    judgment.[5]  No reasonable trier of fact would find for Plaintiff based on this evidence.[6]

2                                    **IV. CONCLUSION**

3          Accordingly, IT IS ORDERED that Plaintiff's Motion for Summary Judgment (#35) is

4    DENIED.

5          IT IS FURTHER ORDERED that Defendants' Motion for Summary Judgment (#36) is

6    GRANTED.

7          The Clerk of the Court shall enter judgment accordingly.

8          DATED: This 29th day of March, 2010.

9

10

11                                    Robert C. Jones
12                                    UNITED STATES DISTRICT JUDGE

13

14

15

16

17   _____

18         [5] Though the Court does not make a credibility determination at this time, it should be
     noted that Plaintiff has equivocated regarding what happened and changed his story many
19   times.

20         [6] While dismissing Plaintiff's § 1983 claim against the City of Sparks, this Court
     previously held that Defendant did not act under color of law when he arrested Plaintiff. (Order
21   (#26) 6:7–11). Though the motion to dismiss the § 1983 claim was only made by the City of
     Sparks, the Court's finding that the pleadings failed to allege that Defendant acted under the
22   color of law necessarily requires dismissal of Plaintiff's § 1983 claim against Defendant as
     well.  In fact, both Plaintiff and Defendant have operated as if the § 1983 claim against
23   Defendant has been dismissed.  Defendant explicitly states that "[t]he civil rights claim has
     been dismissed leaving only state law claims." (Def.'s Opp'n (#41) 15:24–25).  Therefore, to
24   the extent that Plaintiff's § 1983 claim remains pending against Defendant, Defendant is
     entitled to judgment as a matter of law on it.
25         The remaining issues are solely sate-law issues.  The Court may, at its discretion,
     decline jurisdiction over the remaining claims. 28 U.S.C. § 1367(c).  However, neither party
26   has moved to remand.  Therefore, the Court need not conduct an analysis to determine if it
     should exercise its discretion to maintain supplemental jurisdiction. *Acri v. Varian Associates,*
27   *Inc.*, 114 F.3d 999, 1000 (9th Cir. 1997) ("[T]he district court may exercise supplemental
     jurisdiction over state law claims without sua sponte addressing whether it should be declined
28   under § 1367(c).")  Furthermore, in interest of judicial economy, the Court would decline to
     remand this case at this stage in the proceedings.

                                        10